**BEGAM MARKS & TRAULSEN, P.A.**
11201 North Tatum Blvd., Suite 110
Phoenix, Arizona 85028-6037
(602) 254-6071

Richard P. Traulsen – State Bar #016050
rtraulsen@BMT-law.com
*Local Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Diana Geary, individually and on behalf of all similarly situated individuals,<br><br>Plaintiff,<br>v.<br><br>Consumer Cellular, Inc.,<br><br>Defendant. | Case No.: 2:21-cv-00699-DLR<br><br>**JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT** |

## INTRODUCTION

Named Plaintiff Diana Geary, the other 401 employees who opted-in to this Fair Labor Standards Act ("FLSA") collective action, (collectively "Plaintiffs") and Defendant Consumer Cellular, Inc. ("Consumer Cellular" or "Defendant") file this Joint Motion to Approve Settlement Agreement. The parties' settlement is set forth in the attached Settlement Agreement. *See* Ex. 1. The parties request that the Court approve the settlement payments to the FLSA Collective, the proposed attorneys' fees and costs, the service award to Named Plaintiff, and to dismiss this matter with prejudice.

## BACKGROUND

**I.    PROCEDURAL HISTORY.**

Named Plaintiff Geary initiated this action by filing her Complaint on April 22, 2021, on behalf of herself and a putative collective and class of call center employees to recover for Defendant's allegedly willful violation of the FLSA, the Arizona Wage Act,

and Arizona common law. (ECF 1). Defendant filed an Answer to the Complaint on August 9, 2021, denying the claims asserted in the Complaint and asserting affirmative defenses to the action.

On October 8, 2021, Named Plaintiff filed a Motion for Conditional Certification. (ECF 11). Named Plaintiff sought to send notice and conditionally certify an FLSA collective action of Customer Service Representative ("CSR") employees who worked for Defendant and were not subject to an arbitration agreement. *Id.* The parties met-and-conferred regarding Named Plaintiff's Motion for Conditional Certification and reached a Stipulation to send notice pursuant to 29 U.S.C. § 216(b) and Defendant reserved its right to seek decertification of the FLSA Collective. (ECF 18). The parties agreed to send notice to:

> *All current and former Customer Service Representative employees, and/or other job titles performing the same or similar job duties, who worked for Consumer Cellular, Inc., at any time in the last three years and were not subject to an arbitration agreement.*

The Court approved the parties' Stipulation and a 90-day notice period commenced. (ECF 19). At the end of the 90-day notice period, 401 individuals joined the action, not including Named Plaintiff. (ECF 22–74). The parties entered settlement discussions with the hope of reaching a resolution absent the need for full, costly discovery. Defendant provided data for Plaintiffs, including pay rates and start and end dates at the company. The parties discussed their damages calculations, potential monetary and non-monetary terms, and the merits of their respective positions. The parties ultimately reached the resolution presented to the Court in their Settlement Agreement.

## II.    PLAINTIFFS' CLAIMS AND DEFENDANT'S DEFENSES.

Plaintiffs worked as CSRs for Defendant in Arizona and Oregon. The Complaint alleges that Defendant failed to compensate Plaintiffs for all time worked, in violation of the overtime provisions of the FLSA and Arizona state law. Specifically, Plaintiffs allege that they were required to work off-the-clock by booting up and logging into their computers and programs in order to take their first call at their scheduled shift start time.

Plaintiffs claim that this boot-up and call ready process could take up to 15 minutes per day. Plaintiffs supported these allegations in their Motion for Conditional Certification from declarations provided by other CSR employees who worked in Arizona and Oregon for Defendant.[1] (ECF 11 at Exs. C–H). Plaintiffs allege that such work is compensable time under the FLSA, and that Defendant knew such work was being performed without compensation. Plaintiffs further allege that they are entitled to liquidated damages and a three-year statute of limitations because Defendant's violations were willful.

Defendant asserts that it complied with the FLSA and denies that CSRs were not compensated for all time worked. Defendant further asserts that it required CSRs to accurately report all time worked, including time spent logging on and off their computers. Defendant further alleges that any log-in time was *de minimis*. Defendant also maintains that it provided robust timekeeping policies and procedures, including the CSRs ability to request that their time clocks be adjusted to account for issues both in and out of their control.

### III. THE SETTLEMENT.

The parties agreed to resolve Plaintiffs' claims for $100,290.40. Defendant has agreed to pay Plaintiffs the equivalent of 4 minutes of overtime pay for every single workday of that individual's tenure (as opposed to only weeks eligible for overtime pay) within the extended 3-year statute of limitations from the filing of the Complaint. Half of each Plaintiff's settlement payment represents compensation for alleged unpaid overtime, while the remaining half represents alleged liquidated damages. For each settlement payment of unpaid time, 50% of the payment will be considered back wages and subject to all appropriate withholdings and 50% of the payment will be considered liquidated damages not subject to withholdings.

The parties view this as a compromise between Plaintiffs' position that they are owed up to 15 minutes of unpaid overtime per workday for unpaid pre-shift work and

---

[1] The CSR employees who provided declarations are not members of the FLSA Collective because their claims were subject to arbitration agreements. *See Kane and Bowers v. Consumer Cellular, Inc.*, No. 3:20-cv-01558-IM (D. Or.).

Defendant's position that Plaintiffs are owed nothing. Thus, the parties have fairly allocated these funds according to a compromise on the hours allegedly worked and amounts allegedly earned during the relevant statute of limitations period.

The amount allegedly owed to each of the Plaintiffs will be calculated based on each Plaintiff's overtime pay rate and the number of weeks they worked during the statutory period (3 years back from the filing of the Complaint on April 22, 2021) according to the records produced by Defendant. The average settlement payment for the FLSA Collective is $249.48. The average number of workweeks per Plaintiff covered by the statutory period is 16.5, meaning the average Plaintiff has 4 months of work covered by the lawsuit. The settlement further provides for a $1,000.00 service award to Named Plaintiff Geary. Lastly, the settlement provides for Plaintiffs' reasonable attorneys' fees and costs in the amount of $48,709.60.

**ARGUMENT**

**I.    THE COURT SHOULD APPROVE THE SETTLEMENT.**

Employees cannot waive claims for unpaid wages under the FLSA without court approval. As the Eleventh Circuit Court of Appeals explained in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982), in the "context of suits brought directly against their employer under Section 216(b) to recover back wages for FLSA violations," the parties must present any proposed settlement to the district court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness." The Ninth Circuit has implicitly indicated that it would follow the Eleventh Circuit's decision. *See Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1144 (9th Cir. 2007). Arizona courts have also relied on *Lynn's Food Stores*. *See Hand v. Dionex Corp.*, No. CV 06-1318-PHX-JAT, 2007 WL 3383601, at *1 (D. Ariz. Nov. 9, 2007). Accordingly, the parties jointly ask for the Court's approval of the proposed settlement in this case.

If a settlement reflects a "reasonable compromise over issues, such as ... computation of back wages, that are actually in dispute," the district court may approve the settlement "in order to promote the policy of encouraging settlement of the litigation."

*Rape v. Shrader & Martinez Construction USA LLC*, No. CV-21-08158-PCT-DJH, 2022 WL 4182351, at *1 (D. Ariz. Sept. 12, 2022) (citing *Lynn's Food Stores, Inc.* at 1354). The settlements must be fair and reasonable. *Id.* A court should "approve a fair and reasonable settlement if it was reached as an arm's length resolution of contested litigation to resolve a bona fide dispute under the FLSA." *Lockwood v. R&M Towing LLC*, No. CV-19-4812, 2020 WL 5724383, at *2 (D. Ariz. Sept. 24, 2020) (citing *Lynn's Food Stores, Inc.* at 1352–54).

### A.     A Bona Fide Dispute Exists.

A bona fide dispute exists when there are legitimate questions about the existence and extent of defendant's FLSA liability. *Panico v. Turnbull Law Group, LLC*, No. CV-21-02060-PHX-MTM, 2022 WL 220485, at *1 (D. Ariz. Jan. 25, 2022) (internal quotations omitted); *see also Dahl v. Bay Power Inc.*, No. 20-CV-07062-HSG, 2021 WL 2313388, at *2 (N.D. Cal. May 28, 2021) (finding a bona fide dispute where the defendants disputed allegations of failure to pay overtime and asserted several affirmative defenses). Here, as discussed above, Defendant disputes the merits of Plaintiffs' allegations, that a collective action should remain conditionally certified, that liquidated damages should be available, and disputes whether Defendant's conduct was willful, permitting a three-year statute of limitations. Plaintiffs further dispute Defendant's defenses that the work at issue is not compensable under the FLSA and is *de minimis*. Thus, there is a bona fide dispute in this case.

### B.     The Settlement is Fair and Reasonable.

There are no universally used factors to consider in evaluating a proposed FLSA settlement for whether it is fair and reasonable, but some factors courts have looked at are: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *Panico*, 2022 WL 220485, at *2 (citing *Selk v. Pioneers Mem'l Healthcare Dist.*,

1 | 159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016)). Ultimately, courts evaluate whether a settlement agreement of FLSA claims is fair and reasonable under the totality of the circumstances. *Id.* (citing *Selk* at 1173).

For the first factor, as discussed above, Plaintiffs are receiving the equivalent of 4 minutes per workday of alleged overtime, plus liquidated damages, where Defendant asserts that Plaintiffs performed at most a couple minutes of unpaid work, if any, each workday. Plaintiffs' recovery of approximately 25% of their alleged damages is significant and commonly approved by courts. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Ca1. 2015) (finding settlement fair where the settlement represented between 9% and 27% of the total potential recovery); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 57–58 (E.D.N.Y. 2010) (settlement within range of reasonableness when it represented approximately 13% to 17% of the maximum possible recovery). This is especially true where Plaintiffs' recovery is potentially zero if Defendant prevails on its motion for decertification or summary judgment; or if it prevails at trial.

As to the second factor, the stage of proceedings, this litigation has been pending for two years where the parties have continuously weighed their claims and defenses. The parties touched on the facts and merits of the case while negotiating the Stipulation for Conditional Certification and throughout their settlement discussions. No formal discovery has been completed but the parties are well-apprised of the information necessary to resolve Plaintiffs' claims, which included production by Defendant for the purposes of settlement discussions, relevant employment records for Plaintiffs to calculate damages and the declarations provided by other CSR employees.

For the third factor, both parties face significant litigation risks. There is no doubt that if the settlement is not approved, the parties will need to undergo protracted litigation. Although the parties have litigated this dispute for two years, additional litigation is necessary to take the claims through summary judgment and trial. The parties would need to continue discovery through interrogatories, document requests and requests for admission. The parties would also need to conduct several depositions. Plaintiffs and

Defendant intend to brief motions for summary judgment. Continuing litigation would likely delay, by years, a resolution of Plaintiffs' claims. Moreover, almost every Plaintiff must prove that Defendant's actions were willful to recover any amount in this litigation. Many of the Plaintiffs ceased working for Defendant by 2019 and are therefore only covered under a three-year statute of limitations.

For the fourth factor, the Settlement Agreement does not include a general release of claims for any Plaintiff. Plaintiffs will only provide a release for wage and hour claims that could have been asserted in the Complaint by accepting their settlement payment. This factor weighs in favor of approval.

The fifth factor is met as well. The Ninth Circuit favors settlements and believes that, in the absence of clear bias, "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *see also Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, No. 19-CV-06088-LB, 2020 WL 5074392, at *5 (N.D. Cal. Aug. 27, 2020) ("[s]ettlement is a strongly favored method for resolving disputes"). Plaintiffs' Counsel views this settlement as substantial. A 25% recovery of alleged damages is a successful resolution, especially where Plaintiffs have not needed to respond to written discovery requests or sit for depositions and where most Plaintiffs must prove Defendant's willfulness to recover any damages at all. Defendant has agreed to pay each Plaintiff at their overtime rate for 4 minutes per workweek for each week they worked for Defendant during the relevant time period. The assumptions made for this settlement weigh heavily in Plaintiffs' favor because the settlement: 1) assumes every Plaintiff was eligible for overtime each week they worked for Defendant; 2) assumes every Plaintiff worked at least five days per week; 3) assumes every Plaintiff performed work each and every week between their start and end dates; and 4) assumes that every Plaintiff can prove 4 minutes of unpaid work per workweek. Ordinarily, a defendant in an FLSA action is only willing to resolve FLSA claims for weeks where an employee was

1 actually eligible for overtime pay. This settlement is therefore a significant concession by
2 Defendant to resolve this matter and a significant result for Plaintiffs.

3     Lastly, there is no evidence of fraud or collusion. Named Plaintiff was active and
4 involved throughout the settlement negotiations and approved the final amount of the
5 settlement. The Settlement Agreement is therefore fair and reasonable and the Court should
6 approve the parties' request.

## II. THE ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED.

### A. *An Award of Attorneys' Fees is Mandatory in FLSA Cases.*

The FLSA's fee-shifting provision requires employers, including those that settle cases, to pay the employee's reasonable attorneys' fees and costs in having to bring a lawsuit to recover her unpaid wages. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action.") (emphasis added); *Newhouse v. Robert's Ilima Tours, Inc.*, 708 F.2d 436, 441 (9th Cir. 1983) ("The FLSA grants prevailing plaintiffs a reasonable attorneys' fee."). The reason for requiring the employer to pay the employee's legal fees is simple: "[u]nder the FLSA, 'Congress intended that the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs.'" *Sinyard v. C.I.R.*, 268 F.3d 756, 761 (9th Cir. 2001) (quoting *Maddrix v. Dize*, 153 F.2d 274 (4th Cir. 1946)).

Additionally, fees negotiated by the parties at arm's length carry a presumption of reasonableness:

> The fee was negotiated at arm's length with sophisticated defendants by the attorneys who were intimately familiar with the case, the risks, the amount and value of their time, and the nature of the result obtained for the class. Where there is such arm's length negotiation and there is no evidence of self-dealing or disabling conflict of interest, the Court is reluctant to interpose its judgment as to the amount of attorneys' fees in the place of the amount negotiated by the adversarial parties in the litigation.

*In re First Capital Holdings Corp. Fin. Prods. Secs. Litig.*, MDL No. 901, 1992 WL 226321, at *4 (C.D. Cal. June 10, 1992), appeal dismissed, 33 F.3d 29 (9th Cir. 1994); *see*

8

*also* Manual for Complex Litigation § 30.42, at 240 (3d ed. 1997) (a "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery").

Moreover, attorney fee awards in FLSA and other socially beneficial cases are not measured in relation to the underlying monetary relief obtained for the plaintiffs. *See Quesada v. Thomason*, 850 F.2d 537, 540 (9th Cir. 1988); *see, e.g., Int'l Bhd. of Carpenters & Joiners of Am., AFL-CIO, Local Union No. 217 v. G.E. Chen Constr., Inc.*, Nos. 03-17379, 04-16013, 136 Fed. Appx. 36, at *2 (9th Cir. May 11, 2005) (upholding attorneys' fee award of more than $200,000 in action where the plaintiff's individual recovery was less than $50,000); *Morales v. City of San Rafael*, 96 F.3d 359, 362–64 (9th Cir. 1996) (reversing $20,000 attorneys' fee award where counsel had requested nearly $140,000 in fees, because it appeared to the Ninth Circuit that the district court was improperly trying to limit the fee award based on the size of the plaintiff's award); *Heikkia v. Avnet Inc.*, No. CV-21-01531-PHX-DJH, 2022 WL 2967702, at *2 (D. Ariz. July 26, 2022) (granting request to award 2/3 of total settlement amount as attorneys' fees and costs); *see also Fisher v. SD Protection, Inc.*, 948 F.3d 593, 604 (2d Cir. 2020) (reasoning that limiting attorneys' fees to a proportion of the recovery would result in "no rational attorney" taking on FLSA cases unless they were doing so pro bono).

Thus, in FLSA cases, an award of "reasonable" attorneys' fees and costs is mandatory and is not measured against the size of Plaintiffs' recovery.

      **B.**    **Plaintiffs' Counsel's Lodestar Supports the Requested Fee.**

The reasonableness of the agreed upon amount for attorneys' fees is supported by looking at the lodestar. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (discussing lodestar method's application to attorneys' fees awarded from a fee-shifting statute). The lodestar presumptively reflects reasonable attorneys' fees. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (stating that the lodestar figure has become the "guiding light" of fee-shifting jurisprudence). The lodestar is calculated by multiplying the reasonable

number of hours expended in the litigation by a reasonable hourly rate. *Morales*, 96 F.3d at 363.

In determining the reasonableness of hours expended for lodestar purposes, courts consider, inter alia, the novelty and difficulty of the issues and the level of opposition during the litigation. *See Shipes v. Trinity Indus*., 987 F.2d 311, 321 (5th Cir. 1993). Here, Plaintiffs' Counsel was opposed by Jones, Skelton & Hochuli, P.L.C.—a law firm with a reputation for exceptional work in defending employment actions and complex litigation. Plaintiffs' Counsel showed demonstrable skill and quality by engaging in a concerted effort to obtain Plaintiffs' maximum recovery. Plaintiffs' Counsel expended numerous hours, *inter alia*, developing Plaintiffs' case, preparing the complaint, negotiating conditional certification of the FLSA Collective, and negotiating this settlement. Over more than two years, Plaintiffs' Counsel have reasonably spent about 161 hours working on this lawsuit. *See Rusch Decl.* at ¶ 16. The total amount of hours expended in successfully and diligently prosecuting this action therefore is fair and reasonable for the services provided.

In determining the reasonableness of hourly rates, "[a]ffidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). However, counsel's rates are prima facie reasonable when (i) agreed to by the parties, (ii) computed at no more than the attorneys' customary billing rate, or (iii) within range of the prevailing market rate. *See Camp v. Progressive Corp.*, No. Civ.A. 01-2680, 2004 WL 2149079, at *20 (E.D. La. Sept. 23, 2004). For example, in *Su*, although the district court believed that $640 an hour was a high rate, it nevertheless approved the attorneys' fees requested because the defendant had agreed to pay them:

> Defendant does not contest the number of hours, the billing rate, or amount of attorney's fees and costs. In fact, Defendant joins in moving for entry of judgment, and stated that it believes that the attorney's fees are

reasonable. The Court, therefore, accepts the parties' stipulation, and finds that an award of $120,000 in attorneys' fees and costs is reasonable.

*Su*, 2006 WL 4792780, at *5; *see Joh v. American Income Life Ins. Co.*, No. 18-cv-06364-TSH, 2021 WL 66305, at *8 (N.D. Cal. Jan. 7, 2021) (approving partner rates up to $800 per hour and associate rates up to $465 per hour); *see also Mondrian v. Trius Trucking, Inc.*, 2022 WL 6226843, at *13 (E.D. Cal. Oct. 7, 2022) (finding partner rates of $695-$795, associate rates of $475-$550, and paralegal rates of $175-$275 reasonable).

Here, Plaintiffs' Counsel's customary billing rates ranged from $125.00 to $700.00 an hour. *See Rusch Decl.* at ¶¶ 9–12. At their standard billing rates, Plaintiffs' Counsel's lodestar is approximately $77,362.50—not including ongoing and future attorneys' fee and costs required to finalize, execute, and administer the settlement—including distributing the settlement payments to all FLSA Collective members. *Id.* Plaintiffs estimate that another 50 hours of work will be required to fully administer the settlement. Thus, their fees are reasonable for this type of case and the amount of work performed.

Other courts have recently found Mr. Rusch's and Mr. Kaylor's hourly rates reasonable for FLSA work. *See Haegg v. Magellan Health Inc.*, Case No. 2:22-cv-00061-SPL (D. Ariz.) (ECF 68) (approving $650 and $700 rates for Mr. Rusch and $325 and $350 rates for Mr. Kaylor); *Roberts et al. v. AAY Security, LLC*, Case No. 2:19-cv-00366 (S.D. Tex.) (ECF 57–58) (approving rates between $525-$700 for Mr. Rusch and rates of $325 and $350 for Mr. Kaylor); *see also In re: Lowe's Companies, Inc. Fair Labor Standards Act (FLSA) and Wage and Hour Litig.*, MDL No. 2947 (W.D.N.C.) (approving $325 rate for Mr. Kaylor) (ECF 90-6, 94). Plaintiffs' Counsel's hourly rates are therefore reasonable for FLSA work in the District of Arizona.

Plaintiffs' Counsel's lodestar is $77,362.50. This is a fair and reasonable amount expended in light of the work required. The settlement of $48,709.60 for attorneys' fees and costs is therefore reasonable compared to Plaintiffs' Counsel's lodestar. Thus, the Court should approve the requested attorneys' fees and costs.

**III.    THE SERVICE AWARD SHOULD BE APPROVED.**

The parties propose a service award of $1,000.00 to Named Plaintiff Diana Geary. Service awards "are fairly typical in class action cases." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). The Ninth Circuit has recognized that incentive, or service, awards serve an important function as they "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958–59. Service awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, inter alia, the amount of time and effort spent on the litigation, the duration of the litigation, and the degree of personal gain obtained as a result of the litigation. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

The role of Ms. Geary as the Named Plaintiff in this litigation was crucial as she initiated the lawsuit, reviewed and approved the original complaint, conferred with Plaintiffs' Counsel regarding conditional certification, provided a declaration in support of conditional certification, and continuously communicated with Plaintiffs' Counsel throughout the tenure of this litigation, including settlement discussions. Accordingly, this Court should approve the proposed service award to Named Plaintiff Geary.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court issue an Order approving the parties' Settlement Agreement and dismissing this case with prejudice.

Dated: May 4, 2023                                    Respectfully Submitted,

By: s/ *Jacob R. Rusch*                               By: s/ *David C. Potts* (with permission)

Jacob R. Rusch (MN Bar No. 0391892)*                  Gordon Lewis (Bar #015162)
Zackary S. Kaylor (MN Bar No. 0400854)*               David C. Potts (Bar #030550)
**JOHNSON BECKER, PLLC**                              **JONES, SKELTON & HOCHULI P.L.C.**
444 Cedar Street, Suite 1800                          40 N. Central Avenue, Suite 2700
Saint Paul, MN 55101                                  Phoenix, Arizona 85004
T: 612-436-1800                                       T: 602-263-7341
                                                      F: 602-200-7897
                                                      E: glewis@jshfirm.com

12

F: 612-436-1801
E: jrusch@johnsonbecker.com
E: zkaylor@johnsonbecker.com

*Lead Attorneys for Plaintiffs*

Richard P. Traulsen (AZ Bar No. 016050)
**BEGAM MARKS & TRAULSEN, P.A.**
11201 North Tatum Blvd., Suite 110
Phoenix, Arizona 85028-6037
T: 602-254-6071
E: rtraulsen@BMT-law.com

*Local Counsel for Plaintiffs*

*\*Admitted Pro Hac Vice*

E: dpotts@jshfirm.com

*Attorneys for Defendant*